Brady, J.
The commissioners have displayed considerable interest and zeal in the investigation they were selected to conduct, and the court expresses its thanks for the faithful manner in which they have discharged their duties. Early in the progress of these proceedings, having been appointed by me, they ad *421 vised me of their impressions that. Miss Dickie .was not insane or imbecile, and ^suggested that she should be protected by counsel. -1 sent for Mr.' Delafield,'and he readily. and cheerfully undertook the office. He was then invested with full power to act. He performed his duty with fidelity, displaying learning and. ability! The result is a declaration by the jury, after a.patient and thorough .trial, on which experts and acquaintances of hers were examined, that -.Miss Dickie was neither insane nor' imbecile.' It should be here stated that the inquisition is for the purpose of satisfying the ‘ com science of the court on the subject to which it relates. The finding mentioned, it is now said, should be set aside for irregularities ; .but the irregularities.complained 'of are in the interest of justice. She was conversed with before the jury. This is one objection. Her counsel was allowed to present his views of her case to the jury. This is another. The jury have suggested in their verdict that Miss Dickie may,- perhaps,' from her long.' confinement’, and. its consequences, require! some temporary guardianship ; this is another.
. The objector is a sister of Miss Dickie, and therefore,, one standing in such relation to her as to warrant the belief that she would be exultant at her sister’s sanity and deliverance. Her interference seems to be for the purpose, however, expressed through her counsel, of having an. unqualified, decision on the .subject of her sister’.s: lunacy, so that she may be treated with, in perfect-safety.' Whether the extraordinary zeal thus displayed is commendable is a matter with which I have not to deal, but it is clearly unnecessary. ■
The jury have made an' absolute finding on the subject. The suggestion appended is natural and praiseworthy. Miss Dickie, from her long and-'unjust confinement, may require, guidance for a while, and as a late ward of this court she shall have the care of its protecting shield in every manner in which its jurisdic *422 tion can be invoked. Her counsel can seek, for her sake, and on her application, all its power in her behalf. This disposes of one objection. The appearance of Miss Dickie before the.jury was an important element in the investigation, and was decidedly proper. Her . demeanor and her capacity to understand and appreciate what was said were significant incidents. It was of her the jury were to deliberate, with the aid of proof to be submitted.
The presentation of his views, by her counsel, was equally unobjectionable. In days gone by the services of counsel for the criminal were denied, but- the advance of civilization has swept away many of the relics of barbarism, of which this was one.* Day by day the old and seemingly inexorable rules are crushed by the legal iconoclast, and better ones spring from the ruins. The legal doctrines' of one hundred years ago are in numerous instances utterly unfit for the intelligence of the present hour. Indeed, the Code brushed away a system of pleading and practice which was well adapted to legal science as such, but frequently subversive of justice, from errors in forms adopted by the pleader. Miss Dickie was entitled to have her case sifted to the last syllable, and her counsel would perhaps have failed in his duty had he not done what he did. The days for silence are pas hand gone, and speech, though we have too much of it at times, has become the ally of progress, and therefore of greatness. Men speak, and the press speaks, and good comes out of the custom. The time had arrived, too, when both should speak of our system relative to the examination, commitment, treatment and care of the imbecile and insane.
This case suggests grave considerations. ' It appears that attendants, male and female, employed in the institution where Miss Dickie was confined—and doubtless it is so in others—become nervous and-are so far *423 affected as to labor under delusions. Indeed it is well known that physicians in care of lunatics have themselves lost their reason from the effect of the duties incumbent upon them, and the association by which they were surrounded, and thus a diseased mind has had the superintendence and superior control of the lunatic until the infirmity was discovered. These incidents and the dictates of humanity seem to demand that a person sent to an asylum should, for a period of probation, be kept separate and apart from others similarly disturbed—isolated from the general community until the result is demonstrated that at least great doubts of a recovery exist. The surroundings should be of sane and not insane persons, because the inference is fairly warranted that temporary insanity is not lessened by contact with insane persons.
It is also quite apparent that some system of personal supervision should be devised by which persons confined as lunatics should be examined by competent persons other than those who, accustomed to regard them as insane, would approach them with settled convictions or decided impressions of their mental condition. This procedure should bb at stated intervals. If this were a feature of our system, is it possible that Miss Dickie would have remained so long in confinement %
There is another suggestion arising from this case and the results, and that is, that the laws should require a trial such as had herein, or a similar one, within thirty days after a subject is committed to any asylum. At present two physicians may certify that a person is insane, and on their approval by the court the supposed lunatic is sent to the asylum. His mental condition may be such as to demand instant confinement, it is true, but the right to treat him thus should be determined by some more formal and exhaustive process before his restraint should be declared indefinite. The laws require amendment. These sug *424 gestions are made from a' practical, not scientific, point of view. I make no pretense tó a scientific understand-. ing of insanity, its causes, manifestations or cure; but I am well advised, from my experience in the criminal branch of this court, that gentlemen learned on the subject differ very much about individual cases. The interposition of practical treatment in many things may aid the cause in which • they are believed to be interested,"viz., the 'restoration- óf • the mind. It cannot be denied, assuming the finding of'the 'jury in Miss Dickie’s case to be correct, that her long imprisonment is a disgrace to our boasted civilization, intelligence, science and justice, and imposes" upon us the duty of creating every possible preventive against a similar outrage, and disgrace. ' It is impossible, almost, to believe that it was the result of design, singly or by combination ; but if it were, the persons engaged in it should be severely punished. The subtle thing called insanity may bafflefeven vigilant'experience in the best directed efforts to discover'its existence;"and- bepresent though it would seem not to be. In this case we may be deceived; but applying the tests which human ingenuity-has" devised, "the declaration is legally and properly’ made ‘ that Miss Dickie is neither insane nor imbecile. " The objections aré therefore overruled ; the report of the commissioners accepted arid confirmed, and the supposed lunatic discharged from all custody and restraint. '
.. Since the preparation of this opinion I have been advised that a bill has been introduced in the legislature'making provision for a trial such as suggested heréin,: and the "reform-has therefore .begun. It-‘is-’to be hopéd" that: there will be an immediate general revision of the laws,' and a ’wiser and more practical system adopted..
Order entered accordingly. • - . =
.. There was no appeal.

 See People ex rel. Garling v. Van Allen, 55 N. Y. 31.